UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT BRADFORD, )<br>)<br>Bradford, )<br>)<br>v. )<br>)<br>HARTFORD FIRE INSURANCE CO., )<br>d/b/a LAW OFFICE OF THADDEUS J. )<br>GUSTAFSON, )<br>)<br>Defendant. ) | Judge Joan B. Gottschall<br><br>Case No. 10 C 3798 |

## MEMORANDUM OPINION & ORDER

Vincent Bradford brought suit against Hartford Fire Insurance Company, doing business as the Law Office of Thaddeus J. Gustafson (hereafter, "Hartford Insurance"), alleging that he was terminated on the basis of his race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as well as the Civil Rights Act of 1866, 42 U.S.C. § 1981. Hartford Insurance has now filed a motion for summary judgment, arguing that Bradford cannot demonstrate that he suffered any discrimination on account of his gender or race, that any similarly situated female or non-African-American comparator was treated differently, or that Hartford Insurance's stated reasons for taking action against him were pretextual. Because the court concludes that Bradford has not established that a similarly situated comparator was treated more favorably, the court grants the motion.

# I. BACKGROUND[1]

Hartford Insurance operates as a law firm in Chicago, Illinois. During the relevant time period, Hartford Insurance employed various attorneys, two paralegals and seven secretaries. One of those paralegals was Bradford, who was hired as a claims paralegal by attorneys Thaddeus Gustafson and Bill Delaney in late November 2003. Beth Fagan, the office administrator, was Bradford's direct supervisor; she also supervised the legal secretaries in the office. While the paralegal and secretary jobs had some overlap, the claims paralegal position also required the paralegal to conduct legal research and

---

[1] The court includes in the background section only those portions of Hartford Insurance's statements and Bradford's responses that are appropriately presented, supported, and relevant to the resolution of this motion. The facts are taken in the light most favorable to Bradford, the non-moving party. *See DePinto v. Sherwin-Williams Co.*, 776 F. Supp. 2d 796, 799 n.1 (N.D. Ill. 2011). Although Bradford is now represented, the briefing on summary judgment leaves much to be desired. For instance, Bradford attempts to object to facts on grounds such as relevance instead of straightforwardly admitting or denying those facts. (*See, e.g.*, Pl.'s Resp. to Def.'s Rule 56 Statement ¶¶ 8, 15, 34, 44-45, 48-56, 58-61, and 66-68); *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 854 n.11 (N.D. Ill. 2004) (parties are "free to raise their objection in addition to, not in lieu of, providing an admission or properly supported denial"). Bradford also attempts to introduce new facts in his response (*e.g.*, *id.* ¶¶ 8, 9, 14-17, 27-28, 36, 43, 46, and 57), denies asserted facts without citing specific evidence in support of each specific objection (*e.g.*, *id.* ¶¶ 9, 27-31, 54), and denies facts with statements that do not actually address the fact in question (*e.g.*, *id.* ¶¶ 10, 36). In some cases, Bradford does not even make clear the nature of his objection. (*E.g.*, *id.* ¶¶ 38, 39.) As a result, the court deems Hartford Insurance's statement of facts ¶¶ 8-10, 14-17, 27-31, 34, 36, 38-39, 43-46, 48-61, and 66-68 admitted, except to the extent that those statements involve conclusory statements that go to the ultimate issues in this case. *See Oest v. Ill. Dep't Corr.*, 240 F.3d 605, 614 (7th Cir. 2001); *Haywood v. N. Am. Van Lines*, 121 F.3d 1066, 1071 (7th Cir. 1997); *see also Metropolitan Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (noting that a district court has discretion "to require strict compliance with its local rules governing summary judgment") (citation omitted). In his statement of additional facts, Bradford likewise misses the mark. Many of his alleged facts are simply his own arguments (*see, e.g.*, Pl.'s Rule 56 Statement ¶ 6); others are inadmissible hearsay (*e.g.*, *id.* ¶ 5). At times, Bradford places a gloss on statements that might otherwise be supported by the record. For instance, he argues that Hartford Insurance failed to follow the first two steps of a general three-step disciplinary process "without explanation," but there is no support in the cited portion of the record for the fact that the decision to deviate was made without an explanation. (*Id.* ¶ 7.)

Bradford also failed to comply with the court's standing order, which states that "[c]itations to facts in the memorandum must be to both the 56.1(a)(1) documents establishing the fact and to the 56.1(a)(3) statement." The reasoning underlying this requirement is brought into sharp relief here, as Bradford discusses numerous facts in his memorandum opposing summary judgment that were never included in his statement of facts. As such, they cannot be relied upon. And on a more minor note, Bradford's failure to follow the local rules led the CM/ECF system to cut off lines of text in his pleadings, he does not have proper line spacing, and he filed over forty statements of additional fact but never sought leave of court to exceed that limit. In short, this is a mess. Hartford Insurance's briefing is by no means perfect—for instance, it includes multiple facts per paragraph in its statement of facts, and although it cited to its statements of fact in its memorandum, it did not provide parallel cites to the supporting document—but at least the pleadings are capable of meaningful review. The court will do its best to address any relevant issues raised by Bradford's statement of additional facts in the body of the opinion.

complete court filings. Likewise, secretaries performed duties such as opening and closing case files and maintaining the calendar, which were not part of the duties assigned to paralegals. Although Bradford was a paralegal, he sometimes would perform mail duty, which he felt was degrading and beneath his skill set.

A few months after Bradford was hired, in March 2004, he signed a form acknowledging that he had received Hartford Insurance's Code of Ethics and Corporate Certification ("the Code") and that he fully understood that it was his responsibility to comply with the Code.[2] In November 2006, Bradford had his first run-in with Hartford Insurance's disciplinary procedures. During that time, Cynthia Pfeffer, a legal secretary who left Hartford Insurance to work for another law firm, called Bradford at work and asked him to connect a call to a Hartford Insurance Human Resources ("HR") Recruiter. After Bradford connected the call, he stayed on the line and heard the ensuing conversation. The parties dispute whether Pfeffer and the HR Recruiter were aware that Bradford could hear their conversation. Bradford testified that Pfeffer, at least, spoke to Bradford on the call after the HR Recruiter disconnected, which would indicate that Pfeffer knew Bradford had remained on the line.[3] In any event, during the call Bradford

---

[2]  Section XII of the Code requires all Hartford Insurance employees to certify annually that they have received and read the Code and understand their responsibilities to comply with the Code. Bradford claims there is no evidence that he completed the annual certification for any year after 2004, but Hartford Insurance has introduced into evidence a certification signed by Bradford for 2008.

[3]  Hartford Insurance did not properly dispute Bradford's Statement of Fact ¶ 3, which states that "Pfeffer knew Plaintiff was on the phone," and "[a]fter Pfeffer finished the phone conversation, she stated 'Vince, did you hear that. Their [sic] full if it. I would never come back their [sic].'" In response, Hartford only states that Bradford admitted he did not *tell* Pfeffer that he was going to stay on the line. These two points are not mutually exclusive. Hartford Insurance also objects on the basis of foundation, but what foundation it believes to be lacking is unclear: the court knows when this phone call took place, where it took place, and who was on the call. The objection is overruled. With regard to whether the HR Recruiter knew that Bradford remained on the line, this fact is based on double hearsay—Bradford allegedly learned this from the people who terminated his employment, and those people heard it from the HR Recruiter— and therefore this is inadmissible evidence. *See Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301

heard the HR Recruiter make Pfeffer an offer of employment with a yearly salary of $51,000.

Based on that information, Bradford sought out Gustafson, asking why Pfeffer would receive such an offer as a secretary when Bradford was making thousands of dollars less as a paralegal. During this conversation, Gustafson learned how Bradford had heard about the offer. Gustafson questioned Bradford about his alleged eavesdropping, and shortly thereafter Bradford was disciplined under Hartford Insurance's Progressive Discipline Policy ("the Discipline Policy").

While the Discipline Policy itself provides that the process "may vary based on the particular situation," it also outlines three basic steps: (1) a verbal warning, (2) a written warning with an action plan, and (3) a final warning, which "generally" lasts thirty to ninety days. For the eavesdropping charge, Bradford did not proceed through steps one and two; instead, on November 7, 2006, Gustafson and Fagan issued Bradford a final warning. Bradford signed an acknowledgment of receipt of the final warning, thereby indicating that he had been provided a copy and understood the warning's content "as well as its impact to [his] employment should any other incidents occur." Bradford continues to protest that the eavesdropping charge was illegitimate, and that he signed the acknowledgement only because he felt his job was in jeopardy. Up until that time, Bradford had had a good relationship with Fagan and Gustafson.

Bradford's next disciplinary actions took place during the summer of 2008. Although this issue is barely addressed in the briefs, Bradford received a final written warning from Fagan on June 23, 2008 for exceeding his available paid time off by about

---

F.3d 610, 613 (7th Cir. 2002) (at the summary judgment stage, "[t]he evidence need not be admissible in form . . . but it must be admissible in content").

eighty hours. The warning indicates that Bradford had been "previously advised in writing on May 29, 2008 that [he] had exceeded [his] available [paid time off]." Bradford did not file a written response, nor did he address that warning verbally with Fagan.

Bradford's last disciplinary incident also occurred in June 2008. Bradford received a summons for jury service requesting that he report for duty on June 3, 2008 at the Daley Center in Chicago, Illinois. Bradford presented the summons to Fagan, and she approved Bradford's absence from work. The circuit court also required Bradford to attend jury duty the following day, June 4, 2008. But although Bradford did not show up for work on June 3rd or 4th, neither did he go to court. He then proceeded to hide that fact from Hartford Insurance, which compensates its employees for the time they spend performing jury service. On June 5, 2008, Bradford returned to work; Fagan asked Bradford for a copy of the stipend he should have received had he attended jury duty. Bradford admittedly lied to Fagan, telling her that he did not have the stipend because he had already deposited the check at his bank. He sent an email to Fagan representing that he called the court to get duplicate records, but was unable to do so. In a June 13, 2008 email, Bradford responded to Fagan's request for additional information, responding that he "would rather not engage in the process." After some further back and forth, Fagan sent another email on June 18, 2008, again asking Bradford to contact the court so that the court could provide verification.

To that June 18th email, Fagan attached a copy of both Hartford Insurance's Jury Duty Policy and Unpaid Leave of Absence Policy. (Bradford claims not to have received notice of the Jury Duty Policy prior to that day.) Bradford admits that he failed to comply with the Jury Duty Policy, which states that "employees are required to inform

5

supervisors once they have completed jury duty, providing a copy of court documentation as evidence of the number of days they have served," and that "an employee on jury duty should return to work when dismissed from court before the middle of his or her shift." The Jury Duty Policy also states that "managers and employees are responsible for adhering to company policies. Failure to do so may result in disciplinary action up to and including termination."

On June 26, 2008, Bradford's employment was terminated by Gustafson and Fagan. On April 9, 2009, Bradford filed a Charge of Discrimination against Hartford Insurance with the Equal Employment Opportunity Commission ("EEOC"). On March 19, 2010, the EEOC issued Bradford a "right to sue" letter, and Bradford filed his complaint in this court, alleging that he was terminated on the basis of his race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, the court will grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all

doubts in favor of that party." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* at 628 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Doubts about the existence of a material fact "should be resolved in favor of the nonmoving party and summary judgment ought to be denied." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

### III. ANALYSIS

Bradford's complaint alleges that Hartford Insurance (1) did not permit him to work overtime although the secretaries were allowed to do so, (2) refused to credit him for his accumulated paid time off, although secretaries were credited with paid time off, (3) denied his request for a tuition reimbursement despite granting it to a secretary, (4) assigned him secretarial work such as office mail duty, and (5) terminated his employment based on his race and gender. In Count I of his complaint, he alleges that Hartford Insurance violated Title VII by discriminating against him on the basis of his gender; in Count II, he alleges that Hartford Insurance violated Title VII and 42 U.S.C. § 1981 by discriminating against him on the basis of race.[4] The court addresses both issues simultaneously. *See Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 782 (7th Cir. 2006) ("[T]he same standards governing liability under Title VII apply to section 1981.") (quotation marks and citation omitted).

---

[4] Hartford Insurance argues that Bradford's complaint only brought suit under Title VII, but a close reading of the complaint, which this court interprets liberally given Bradford's *pro se* status at the time, indicates that he brought suit under both Title VII and § 1981. The confusion stems from the fact that he defined his claims collectively as "Title VII." (*See* Compl. ¶ 1 ("This is an action seeking redress for violations of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981 ("Title VII").").

A plaintiff can establish his *prima facie* case of racial discrimination via the direct or indirect method of proof, "or a combination of the two." *See Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 672-73 (7th Cir. 2012). Here, Bradford argues only that he has satisfied the indirect method of proof.[5] Under the indirect method of proof, Bradford must satisfy four requirements to establish a *prima facie* case of discrimination: he must show that (1) he is a member of a protected class; (2) his performance met his employer's legitimate expectations; (3) despite this performance, he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. *See Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 554 (7th Cir. 2011); *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004) (noting that the second and fourth prongs of this test "merge" when the allegation relates to disparate punishment). Only after Bradford establishes this *prima facie* case does the burden shift back to Hartford Insurance to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *See South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). If Hartford Insurance can do so, the ultimate burden shifts back to Bradford to present evidence showing that Hartford Insurance's purported reason for the adverse action was pretextual. *Id.*

---

[5] Although Bradford admits that Gustafson never made any statements that indicated Gustafson was biased against Bradford based on his gender or race, Bradford alleges that Fagan made a few comments to this effect, which Fagan denies. The most relevant comment—the only one that relates to gender or race on its face—is one Fagan made at some unknown date to the effect of "why is it that some black people do not want to work." Bradford has conceded that he is not attempting to establish discrimination via the direct method of proof. Thus, while this statement might be circumstantial evidence of Fagan's discriminatory animus, Bradford still must establish a *prima facie* case of discrimination to survive summary judgment. *See Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001) ("Although [the plaintiff] testified to 'inappropriate' racial remarks made by [the supervisor], those remarks, while made in [the plaintiff's] presence, were not made to or about her and were not related to the employment decision in question. Thus, to survive summary judgment [the plaintiff] had to prove a prima facie case of discrimination under the burden-shifting method."); *Randle v. LaSalle Telecomm'cns, Inc.*, 876 F.2d 563, 570 (7th Cir. 1989) ("Although these comments may well serve as circumstantial proof of [the supervisor's] discriminatory animus, they are completely unrelated to the employment decision challenged by the appellants.").

Here, the parties concede that Bradford, as a male African-American, is a member of a protected class. As Harford Insurance recognizes, there were numerous events alleged in Bradford's *pro se* complaint that he arguably considered to be adverse employment actions, but as Bradford (who is now represented by counsel) makes clear in his response, the only adverse employment action he is alleging is his termination. This is the "quintessential example of an adverse action." *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 678 (7th Cir. 2010). And as this is a disparate discipline case—Bradford alleges that two legal secretaries were not disciplined in the same manner as he was for similar Code violations—there is no question that Bradford failed to meet his employer's expectations. As a result, Bradford must establish that he received "dissimilar—and more harsh—punishment than that received by a similarly situated employee who was outside the protected class." *See Lucas*, 367 F.3d at 728.

The court therefore focuses on whether Bradford was treated differently than his similarly situated co-workers. "The similarly situated analysis requires a context-based examination of all relevant factors." *Eaton*, 657 F.3d at 556 (quoting *South*, 495 F.3d at 752-53) (alteration in original). When "uneven discipline is the basis for a claim of discrimination," generally "the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor." *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011). Although Hartford Insurance included facts relevant to additional employees based on the *pro se* complaint, Bradford's response makes clear that he argues that only two employees were similarly situated: Sheila Hayes and LeAnn Hiler, both of whom are legal secretaries, and both of whom are Caucasian females.

Hayes, Hiler and Bradford all shared the same supervisor: Fagan. And although there is some question as to whether their performance standards were the same—Bradford's own response concedes that Hartford Insurance required paralegals to have three years of litigation experience and to have a paralegal certificate, while secretaries had no such requirement (*see* Pl.'s Mem. in Opp'n at 21), and the job duties between the two positions do not precisely overlap—the court will assume on summary judgment that there were enough similarities to make the comparison meaningful. *See Coleman v. Donahoe*, 667 F.3d 835, 848-49 (7th Cir. 2012) (where comparators "worked at the same job site as [the plaintiff], were subject to the same standards of conduct, violated the same rule, and were disciplined by the same supervisor," they were capable of meaningful comparison despite difference in job titles and duties). But even with this assumption, Bradford cannot survive summary judgment, because Hiler and Hayes' alleged misconduct varies too greatly from Bradford's own to allow for meaningful comparison. *See Harper v. C.R. England, Inc.*, --- F.3d ---, 2012 WL 2053574, at *8 (7th Cir. 2012); *Hanners v. Trent*, 674 F.3d 683, 693 (7th Cir. 2012) ("[W]hen a plaintiff alleges that he received harsher discipline than other employees, it is necessary for the court to consider whether the employees engaged in the same conduct for which the plaintiff was disciplined."); *Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (holding that a plaintiff could not survive summary judgment where she failed to identify any other employee who engaged in comparable misconduct and nonetheless received more favorable treatment).

Bradford claims that Hiler had fifteen separate infractions and Hayes had ten, yet neither was terminated, whereas he had only a single infraction and was fired from his

job.[6] Putting aside the fact that Bradford has not offered any specific evidence to support these numbers, it is the nature of the disciplinary infraction, not the number, that is relevant to the court's inquiry. Bradford argues that Hayes and Hiler were subjected to discipline "due to their attendance infractions and inability to maintain required work performance and/or production levels." Bradford points to Hayes' poor attendance and absenteeism, and notes that on one occasion she accepted a gift from opposing counsel (which was not permitted by Hartford Insurance policies). Bradford also points to Hiler's history of leaving work early "without permission." These disciplinary issues are not similar enough to Bradford's own infraction to allow this court to make a meaningful comparison. Bradford not only sought and obtained leave to miss work under the false premise that he would serve jury duty, but he then proceeded to actively mislead his supervisor time and time again, over the course of weeks, in an attempt to escape detection. By contrast, Bradford has not established that either Hayes or Hiler behaved in such a fashion. There is a marked difference between deliberate lying and excessive absenteeism.

Moreover, the evidence of record does not support Bradford's claims. He indicates that Hiler and Hayes were able to escape punishment, but both received warnings for their absences. And although he characterizes Hiler as leaving work early "without permission," she in fact testified that on many occasions she had permission

---

[6] Bradford argues that his prior final warning for eavesdropping does not count, because the Discipline Policy provides that final warnings generally last for between thirty and ninety days. Thus, Bradford believes the 2006 final warning had "expired" and could not be used to support his termination. For purposes of summary judgment, the court will credit this argument and presume that Bradford had only the single infraction for lying about his jury service. The court notes, however, that although the Disciplinary Policy also states that the "general" rule that final warnings generally last for between thirty and ninety days, Bradford's 2006 final written warning says only that "if any future occurrence or violation results, your employment may be terminated without further notice."

from Fagan to do so.[7] The court cannot say that Hiler, Hayes and Bradford are similarly situated on the pleadings and evidence presented to this court. Bradford simply has not made out a *prima facie* case of race or gender discrimination. Because the court resolves the motion for summary judgment at the *prima facie* stage, the court has no reason to discuss Bradford's claim that the reasons given for his termination were pretextual, including *inter alia* any alleged disparities in overtime availability or delays in reimbursing Bradford for tuition.

### IV. CONCLUSION

For the reasons set forth above, the court grants Hartford Insurance's motion for summary judgment. The case is dismissed.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: June 20, 2012

---

[7] The court's review of Bradford's alleged supporting documentation is challenging, given Bradford's method of providing only the precise page cited in support; he also appears to have mixed random pages of various depositions together in a single exhibit. (*See, e.g.*, Pl.'s Ex. 6, ECF No. 53 (skipping from page 12 to page 198 of what appears to be a different witness's deposition, then from page 199 to page 37, then from page 37 to 70, then back to page 16).)